# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MICHAEL SAUNDERS,

   Plaintiff,

v.

BALTIMORE CITY POLICE DEPT.,
SGT. WAYNE E. JENKINS,
DET. MAURICE K. WARD,
DET. EVODIO C. HENDRIX,
DET. MARCUS R. TAYLOR,

   Defendants.

Civil Action No.: CCB-19-551

## MEMORANDUM

In response to this verified civil rights complaint, defendants Evodio C. Hendrix, Maurice K. Ward, Baltimore City Police Department ("BPD"), Wayne E. Jenkins, and Marcus R. Taylor. move to dismiss the claims against them. (ECF 17, 20, 22). After each motion was filed, self-represented plaintiff Michael Saunders was advised, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), of his right to file a response and of the consequences of failing to do so. (ECF 19, 21, 23). Although Saunders sought and was granted an extension of time to file an opposition response to defendants' motions, he has not done so.[1] (ECF 24, 26). No hearing is necessary to resolve the matters pending before the court. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the motion to dismiss filed on behalf of BPD (ECF 20) will be granted and the motions to dismiss filed on behalf of Jenkins, Ward, Hendrix, and Taylor (the "individual defendants") (ECF 17, 22) will be granted in part and denied in part. Saunders will be appointed

---

[1] Saunders' complaint is verified and suffices as an opposition to the motions. *See Davis v. Zahradnick*, 600 F.2d 458, 459–60 (4th Cir. 1979).

counsel, who will be permitted to file an amended complaint prior to the issuance of a scheduling order.

## COMPLAINT ALLEGATIONS

Saunders, who is incarcerated at Western Correctional Institution in Cumberland, Maryland, alleges that on September 15, 2016, Jenkins, Ward, Hendrix, and Taylor subjected him to a traffic stop in Baltimore City in the 5600 block of the Alameda. (ECF 1 at 2). Detective Hendrix pulled Saunders over because of "suspected 'illegal activity,'" but Saunders maintains that nobody riding in the car exhibited any illegal behavior at the time of the stop. (*Id*.).

Detectives Hendrix and Ward removed Saunders and the passenger from the truck and searched it. (*Id*.). During the course of the search, the officers found "$18,000 in $100 dollar bills" and advised Saunders that they believed the cash to be drug money. (*Id*.). Saunders claims that Hendrix and Ward told him that "if [he] did not want the FBI to get involved that [Saunders should] keep his mouth shut." (*Id*. at 3). When Saunders attempted to explain that the money was in his lawful possession and he had hoped to use it at a car auction, he claims that Hendrix and Ward threatened to "blow [his] brains out." (*Id*.). Saunders states he believed the threat and therefore agreed to allow the officers to take his money. (*Id*.). Once he agreed, Saunders claims that Officer Jenkins said, "I knew you'd see things my way," and then placed a gun against Saunders's head and said, "I better not hear anything about this, or the next time I see you, you will die." (*Id*.).

During the course of his interactions with the officers, Saunders was arrested for a handgun that was found in the truck. (ECF 1 at 4). He states that the charges against him were later dismissed. (*Id*.). Saunders adds that the individual defendants were detained[2] at the Harford

---

[2]   The individual defendants were prosecuted in this court for RICO violations and related charges in connection with their roles in the Gun Trace Task Force, a specialized unit for the BPD later found to be engaged in criminal

County Detention Center, where Saunders also was detained, and claims they "were able to get 'messages' to [him] such as ". . . keep your mouth shut!, etc." (*Id*.). Saunders alleges that the conduct of the defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution and violated his rights under the Maryland Declaration of Rights. (*Id*. at 5). He seeks five million dollars in compensatory damages against each defendant and five million dollars in punitive damages against each defendant. (*Id*. at 6).

## MOTIONS TO DISMISS

Ward and Hendrix seek dismissal of the complaint, asserting that (1) any Fourth Amendment claim that could be alleged is barred by qualified immunity; (2) the complaint fails to state a claim under the Fourteenth and Eighth Amendments; and (3) any state law claims asserted should be dismissed for failure to comply with the Local Government Tort Claims Act ("LGTCA"). (ECF 17-1). Ward and Hendrix argue that the law is unclear regarding whether theft by a police officer is a Fourth Amendment violation. They reason that because the law is unsettled, they are entitled to qualified immunity on the claim against them. Jenkins and Taylor also join in the motion filed by Ward and Hendrix, raising the same grounds for dismissal in their motion to dismiss. (ECF 22-1).

BPD seeks dismissal of the claims against it and adopts the motion to dismiss filed on behalf of Ward and Hendrix. (ECF 20). Additionally, BPD asserts that (1) as an agency of the State of Maryland, it is not a person amenable to suit under 42 U.S.C. § 1983 and is entitled to Eleventh Amendment immunity; (2) Saunders fails to state a claim against BPD; (3) BPD is

---

activity. *See United States v. Kenton Gondo, et al.*, Crim. Case CCB-17-106 (D. Md. 2016); *United States v. Jenkins*, Crim. Case CCB-17-638 (D. Md. 2018). Jenkins was sentenced to serve 240 months for RICO conspiracy and Hobbs Act robbery, (Crim. Case CCB-17-106, ECF 422), and 60 months consecutive for destruction, alteration or falsification of records in a federal investigation and deprivation of rights under color of law, (Crim Case CCB-17-638, ECF 12). Ward was sentenced to serve 84 months for RICO conspiracy. (Crim. Case CCB-17-106, ECF 418). Hendrix was sentenced to serve 84 months for RICO conspiracy. (Crim. Case CCB-17-106, ECF 420). Taylor was sentenced to serve 216 months for RICO conspiracy and Hobbs Act robbery. (Crim. Case CCB-17-106, ECF 416).

entitled to sovereign immunity on any state law claims because Saunders did not comply with the LGTCA; and (4) Saunders may not claim punitive damages against BPD. (*Id*. at 2).

The defenses raised by each of the defendants are addressed below.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc*., 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## ANALYSIS

**I.     BPD**

Saunders files his federal claims pursuant to 42 U.S.C. § 1983, which provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen

of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

*Id*. (emphasis added). BPD argues that it is not a "person" within the meaning of the statute and thus is not subject to suit under § 1983. (ECF 20-1 at 6). While municipalities are "persons" within the meaning of the statute, *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), states and state officials acting in their official capacities are not, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Indeed, Maryland courts have consistently held that BPD is a state rather than a municipal agency. *See Houghton v. Forrest*, 412 Md. 578, 588 (2010). But the Supreme Court's holding in *Will* that states and their agents are not subject to § 1983 suit "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." *Id*. at 70. Whether BPD is amenable to suit under § 1983 thus depends on whether it is a state agency for Eleventh Amendment purposes. Courts in this district have held that it is not. *See Grim v. Baltimore Police Dep't*, No. CV ELH-18-3864, 2019 WL 5865561, at *15 (D. Md. Nov. 8, 2019) (collecting cases);[3] *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 548 (D. Md. 2003); *see also Estate of Bryant v. Baltimore Police Dep't*, No. CV ELH-19-384, 2020 WL 673571, at *29–31 (D. Md. Feb. 10, 2020) (applying the Fourth Circuit's four-factor test for analyzing whether an entity is sufficiently connected to a state for immunity purposes and concluding that BPD is not entitled to Eleventh Amendment immunity). Accordingly, BPD is a "person" subject to suit under § 1983.[4]

---

[3] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.
[4] BPD's reliance on *Estate of Anderson v. Strohman*, 6 F. Supp. 3d 639, 645 (D. Md. 2014), and *Burgess v. Baltimore Police Dep't,* No. CV RDB-15-0834, 2016 WL 795975, at *6 (D. Md. Mar. 1, 2016), is misplaced. In those cases, the court addressed whether Baltimore City was amenable to a § 1983 suit based on the actions of BPD officers. Here, by contrast, the relevant question is whether BPD itself may be sued. *Accord Grim v. Baltimore Police Dep't*, No. CV ELH-18-3864, 2019 WL 5865561, at *13 n.7 (D. Md. Nov. 8, 2019).

Nevertheless, Saunders's present complaint fails to state a claim against BPD. "[A] municipality is liable only for its own illegal acts," meaning that it may be sued under § 1983 only pursuant to a *Monell* theory of liability. *See Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014). In *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 691, 694 (1978), the Supreme Court held that a municipality may be sued as an individual for any constitutional violations proximately caused by a policy, custom, or practice of the defendant and noted that municipal policy arises from written ordinances, regulations, and statements of policy. Here, however, Saunders does not allege that BPD engaged in conduct via policies, failures to act, or other means by which unlawful behavior was tolerated or encouraged. Without any factual allegations regarding its role in the injury suffered by Saunders, BPD is entitled to dismissal without prejudice of the federal claims against it.

## II. The Individual Defendants (Jenkins, Ward, Hendrix, and Taylor)

The individual defendants assert they are entitled to qualified immunity with respect to Saunders's claim that they stole money from him during the traffic stop. (ECF 17-1 at 5–9). The individual defendants assert that Saunders's claim is more appropriately analyzed under the Fourth Amendment, not the Fourteenth or Eighth Amendment as his complaint seems to suggest.[6] (*Id.* at 8–11). When analyzed under the Fourth Amendment, the individual defendants reason, a

---

[6] The court agrees that Saunders's claim should be analyzed under the Fourth Amendment. Where the substance of a claim addresses a right guaranteed more specifically by another constitutional provision, the court should analyze the claim under that provision. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994). Here, Saunders alleges an unconstitutional seizure, which is more appropriately analyzed under the Fourth Amendment than under the Fourteenth Amendment.

Saunders's claims regarding the alleged conduct of the officers during the traffic stop is not appropriately brought under the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 318 (1986) (Eighth Amendment applies only after a person has been convicted of a crime). To the extent that Saunders states a separate claim relating to the alleged threats, he has failed to state sufficient facts to survive dismissal, and the claim will be dismissed without prejudice.

6

constitutional claim is not clearly established under existing law where, as here, defendants are alleged to have stolen money. (*Id*. at 5–6).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Essentially, "qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (citation and quotation marks omitted). Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Once a qualified immunity defense is raised, to avoid dismissal "a plaintiff must allege sufficient facts to set forth a violation of a constitutional right, and the court must conclude that this right was clearly established at the time of the alleged violation." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018) (citing *Pearson*, 555 U.S. at 232). This two-pronged inquiry need not be analyzed in any particular order. *Id*. A "clearly established" right is violated when, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citations and quotation marks omitted). "To be clearly established, a legal principle . . . must be 'settled law,' . . . which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority." *Id*. at 589–90 (citations and quotation marks omitted).

7

Further, the "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule that plaintiff seeks to apply." *Id.* at 590.

The individual defendants focus on the "clearly established" prong and assert that existing law did not establish that taking Saunders's money during a traffic stop was a constitutional violation. (ECF 17-1 at 6). The only "precedent" that existed at the time of the stop was an unpublished Fourth Circuit opinion, *Mom's Inc. v. Willman*, 109 Fed. App'x 629 (4th Cir. 2004), which acknowledged that theft by a police officer is a violation of the Fourth Amendment. *Id.* at 637. The *Mom's* court held, however, that at the time the case was decided, no reasonable officer would have known that the conduct at issue—the failure to return items seized in a search pursuant to a warrant—violated the Fourth Amendment. *Id.*

Several other Courts of Appeals have concluded that an officer who unlawfully fails to return property which was properly seized in the first place does not violate the Fourth Amendment. In *Shaul v. Cherry Valley–Springfield Central School District*, the Second Circuit held that a failure to return property that was reasonably seized did "not, by itself, state a separate Fourth Amendment claim of unreasonable seizure." 363 F.3d 177, 189 (2d Cir. 2004). In *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir.1999), and *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir.2003), the Sixth and Seventh Circuits similarly held that while the Fourth Amendment protects an individual from unreasonable seizure, once an initial reasonable seizure is complete, there is no Fourth Amendment interest in regaining the property. In *Springer v. Albin*, the Tenth Circuit held that law enforcement agents did not violate a clearly established Fourth Amendment right when they allegedly returned to the plaintiff $2,000 less than they had lawfully seized. 398 F. App'x 427, 433, 436 (10th Cir. 2010).

The Ninth Circuit's recent examination of this question, however, more closely aligns with the Fourth Circuit's reasoning in *Mom's*. In *Jessop v. City of Fresno*, the Ninth Circuit stated that law enforcement officers' alleged theft of property after it had been validly seized "might have been a Fourth Amendment seizure because 'the Fourth Amendment doesn't become irrelevant once an initial seizure has run its course.'" 936 F.3d 937, 941 (9th Cir. 2019) (quoting *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017)). Nevertheless, like the Fourth Circuit in *Mom's*, the *Jessop* court held that any such right was not sufficiently "clearly established" to permit the officers to be sued under § 1983. *See Jessop*, 936 F.3d at 942. There thus appears to be a split among the several circuits on the question of whether a law enforcement officer's failure to return lawfully seized property implicates the Fourth Amendment: The Fourth and Ninth Circuits suggest that it might; the Second, Sixth, and Seventh Circuits disagree. At present, however, both approaches result in qualified immunity for the officer, as any Fourth Amendment right is not "clearly established."

The individual defendants here argue that because the alleged theft occurred during a lawful traffic stop, any seizure of "incriminating items" would have been permissible. (ECF 17-1 at 7–8; ECF 22-1 at 6). Even if Saunders had a Fourth Amendment interest in the return of those items (i.e., the cash), the individual defendants assert that the right was not "clearly established." There are important facts here, however, that give the court pause. All the opinions discussed above rest on the premise that the initial seizure was lawful. Taking his assertions as true, the seizure of Saunders's cash took place ostensibly pursuant to a search incident to arrest; however, Saunders also claims that a gun was placed against his head and his life was threatened in connection with the seizure of the cash he had in his car. Further, nothing is noted on the arrest report regarding the money seized, (*see* ECF 17-2 at 3), casting doubt on the officers' claim that

the money was validly seized during the arrest.[8] Saunders further claims that the threats continued when he was in the same detention facility as defendants. If, as noted previously, the purpose of a qualified immunity defense is to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson*, 555 U.S. at 231, the facts asserted by Saunders weigh heavily on the side of denying such protection. Robbing a person at gunpoint under the auspices of one's status as a police officer does not resemble in any respect a reasonable discharge of duties in a "gray area" of the law. To suggest that these defendants are entitled to protection from liability because they "reasonably believed" their actions did not violate federal law under these circumstances is questionable at best.

The individual defendants rely on the statement of probable cause written after the traffic stop of Saunders's car to bolster their assertion that the search and subsequent seizure of cash, which is not mentioned in the statement, was not a violation of the Fourth Amendment. (ECF 17-2 at 3). The statement, signed under oath, was authored by Taylor, who is now serving 216 months in federal custody for violation of RICO and the Hobbs Act. *See United States v. Gondo, et al.*, Crim. Case CCB-17-106 (D. Md. 2018). While the individual defendants assert in part that this document may be relied upon without converting their motion to dismiss to one for summary judgment because there is no dispute about its authenticity, (*see* ECF 17-1 at 12 n.6), the allegations of the verified complaint establish that there is in fact a dispute about the veracity of the statement. (*See* ECF 1 at 2 (denying any exhibition of illegal behavior prior to traffic stop)). Further, that dispute is a reasonable one given that Saunders's description of his interaction with

---

[8] The officers' failure to note the seizure also deprived Saunders of any remedy regarding the loss of the cash. *Cf. Mom's*, 109 F. App'x at 636 (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (no due process violation where adequate mechanisms exist for the plaintiff to recover the value of illegally seized property)).

these defendants tracks the modus operandi of BPD's Gun Trace Task Force. (*See Gondo*, Crim. Case CCB-17-106, ECF 1 at 5, ¶ 16 (Indictment describing means and methods of conspiracy including: "conducting traffic stops of vehicles and stealing money;" and "preparing false and fraudulent official incident and arrest reports")).

While a meritorious qualified immunity defense requires dismissal from suit as early as possible in the litigation, *Pearson*, 555 U.S. at 231–32, the current procedural posture of this case, coupled with Saunders's *pro se* status, warrants further briefing as well as appointment of counsel for Saunders so that his claims can be more fully stated in an amended complaint.

## III. State Constitutional Claims

With respect to Saunders's Maryland constitutional claims, BPD and the individual defendants argue that the claims must be dismissed for failure to comply with the requirements of the LGTCA. The LGTCA requires that a plaintiff seeking to sue directly a local government[9] or its employees must first satisfy a notice requirement. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-304(b). The notice requirement, however, "could be deemed satisfied upon substantial compliance, where the purpose of the notice requirement [was] fulfilled." *See Hispanic Nat'l Law Enf't Ass'n NCR v. Prince George's Cty.*, No. CV TDC-18-3821, 2020 WL 903205, at *7 (D. Md. Feb. 25, 2020) (citing *Moore v. Norouzi*, 807 A.2d 632, 640-41 (Md. 2002)) (quotation marks omitted).[10] The purpose of the notice requirement is to have "the claimant furnish the municipal body with sufficient information to permit it to make an investigation in due time, sufficient to ascertain the character and extent of the injury and its responsibility in connection with it." *Id*.

---

[9] For LGTCA purposes, BPD is a "local government." *See* Md. Code Ann., Cts. & Jud. Proc. § 5-301(d)(21).
[10] The court notes that § 5-304(e) of the LGTCA further relaxes the notice requirement, providing that it "does not apply if, within 1 year after the injury, the defendant local government has actual or constructive notice of: (1) The claimant's injury; or (2) The defect or circumstances giving rise to the claimant's injury." *See* Md. Code Ann., Cts. & Jud. Proc. § 5-304(e). Section § 5-304(e), however, did not become effective until October 1, 2016. *See Hispanic Nat'l Law*, 2020 WL 903205, at *7. As Saunders's claims accrued on September 15, 2016, the day of the traffic stop, the court will analyze the notice requirement as stood on that day. *See id*.

11

The defendants argue that a letter dated September 1, 2017, from Saunders's then-attorney to the Baltimore City Solicitor does not constitute substantial compliance. The letter states that Saunders "intends to file a claim pursuant to the LGTCA" "against the Baltimore City Police Department and its officers for false imprisonment and various other violations of State constitutional rights as a result of his arrest on 09/15/2016." (*See* Letter, ECF 17-3). The defendants argue that this letter is insufficient because it did not give notice of Saunders's central claim: that the officers stole $18,000 from him. The court agrees that the letter does not constitute "substantial compliance" with the notice requirement. The letter does not describe in any detail the nature of the claims Saunders intended to pursue, nor does it address his alleged injury. The court does not believe that the scant information in the letter about Saunders's potential claims would have "permit[ted] [BPD] to make an investigation in due time." *See Hispanic Nat'l Law*, 2020 WL 903205, at *7. Saunders thus did not satisfy the notice requirement of the LGTCA, nor has he argued that the notice requirement should be excused.[11] Accordingly, the state law claims will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, BPD's motion to dismiss (ECF 20) will be granted, and the individual defendants' motions to dismiss (ECF 17 and 22) will be granted in part and denied in part. The dismissals, however, will be without prejudice. This court's order denying Saunders's motion to appoint counsel (ECF 26) will be vacated and the motion granted. Upon counsel entering their appearance on Saunders's behalf, appointed counsel will be granted 28 days[12] in

---

[11] Pursuant to § 5-304(d), "unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." Md. Code Ann., Cts. & Jud. Proc. § 5-304(d). Saunders, however, did not discuss the notice requirement in his Complaint, nor did he file an opposition to the defendants' motions to dismiss.

[12] If additional time is needed, appointed counsel may seek an extension of time.

which to file an amended complaint. The further progress of this case will be governed by a scheduling order which will be issued upon receipt of the amended complaint. A separate order follows.

  3/30/20                                            /S/
Date                                         Catherine C. Blake
                                             United States District Judge